**Emmett M. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 01–CF–1458.

District of Columbia Court of Appeals.

Argued March 4, 2004.

Decided July 8, 2004.

---

1. Any pending motions in this appeal are denied as moot.

Eric E. Klein, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Jeanne M. Hauch, and Elizabeth H. Carroll, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior J.

## I.

Appellant Emmett Jones was convicted of three counts of first-degree sexual abuse against three different complainants, in violation of D.C.Code § 22–4102 (1997), two counts of aggravated assault while armed, in violation of D.C.Code §§ 22–504.1, –3202 (1994), and one count of aggravated assault, in violation of D.C.Code § 22–504.1. On appeal, appellant contends: (1) that in violation of the Confrontation Clause of the Constitution, the trial judge prevented him from cross-examining an investigating officer with regard to omissions from warrant affidavits and the officer's failure to comply with a Department General Order with respect to identification procedures, and (2) that his unarmed aggravated assault count against one of the complaining witnesses should have merged with the count of aggravated as-

sault while armed. For the following reasons, we affirm.

## II.

### A.

*Complainant O.D.*

At trial, in addition to other supporting evidence, three complaining witnesses testified that they were sexually assaulted on different occasions. The first witness, O.D., stated that on December 19, 1999, she was working as a prostitute at 9th and Jefferson Streets, N.W., in Washington, D.C. O.D. stated early that day she was approached by appellant, who was driving a burgundy van. She entered the van and agreed to perform oral sex in exchange for $10. O.D. subsequently offered to have vaginal intercourse with appellant. While laying on her stomach, appellant thrust a bottle into her body. The bottle was approximately a foot long, and appellant forced the entire bottle into O.D.'s anal cavity, causing her to scream and beg appellant to stop. Shortly thereafter, O.D., whose clothes and body were covered in blood, was able to exit the van. She attempted to remove the bottle, but was unable to do so. Appellant removed the bottle and gave her $10. O.D. eventually went to a nearby apartment and ingested crack cocaine with other individuals. They persuaded her to seek medical attention and convinced her to wait outside while they anonymously called an ambulance. An ambulance arrived and took O.D. to Washington Hospital Center, where she was treated by Dr. Sangeeta Wood and other physicians. Dr. Wood testified that O.D.'s clothing was soaked in blood and that she received serious lacerations to her intestines. Dr. Wood also testified that the injuries required life-saving surgery.

O.D. was interviewed by detectives while in recovery. She described her assailant as a "black male, in his thirties, medium build, medium complexion, wearing a baseball cap." She described the vehicle in which she was attacked as "a burgundy van with wood on the side and slid[ing] doors." In April 2000, in the presence of two police detectives, O.D. positively identified a photograph of appellant as her assailant after viewing a photographic array. A few days later, O.D. was a passenger in a vehicle driven by the two detectives and she identified the areas where she was picked up (9th and Jefferson Streets) and attacked (between 14th Street and Piney Branch Road, near a "big green fence"). She was not asked to view a lineup.

### B.

*Complainant R.W.*

Another complaining witness, R.W., stated that on the evening of February 9, 2000, she was working as a prostitute on the corner of 8th and Kennedy Streets, N.W. She observed a burgundy van with wood paneling and a sliding door driven by appellant. Appellant eventually approached her, and she agreed to have vaginal intercourse with appellant for $10. When she entered the van, appellant asked if they could have anal sex, but R.W. steadfastly refused. During the course of their exchange, appellant asked R.W. to turn around so her back was facing him. He then went to the front of the van to get a jar of vaseline. R.W. asked appellant what he was doing. As she made her inquiry, appellant rammed his hand and part of his arm repeatedly into R.W.'s anus and vagina. R.W. tried to get away, but appellant pinned her down and punched her in the face numerous times. She eventually escaped from the van.

R.W. did not initially report the incident to the police, thinking they would not be

receptive to a complaint from a prostitute. However, her pain became so severe that she went to Shady Grove Hospital a day and a half after the incident occurred, where she was treated for her injuries. While at the hospital, R.W. met with a police detective and gave an initial description of her assailant, describing him as tall, clean-shaven, and wearing a scarf over his head. This description was used to form a composite drawing. When shown the composite drawing, however, R.W. concluded that the rendering did not resemble her assailant. Subsequently, R.W. attended a lineup at police headquarters, where she identified appellant as her assailant with some hesitation. At trial she stated she was certain that appellant was her assailant. R.W. also viewed a photograph of appellant's van and concluded that it was the vehicle in which she had been attacked. R.W. also identified the areas where she had been picked up and attacked.

## C.

### Complainant H.T.

H.T., a third complaining witness, testified that on February 17, 2000, she was working as a prostitute in the area of Georgia Avenue and Delafield Place, N.W. She watched appellant get into a burgundy van with wood panels. He then pulled his vehicle up to her, and she agreed to perform oral sex for $15. Appellant informed H.T. that he wished to have vaginal intercourse as well. As H.T. was lowering her pants and moving around in the van, appellant pinned her down and forced a bottle into her rectum. H.T. screamed in severe pain. As she was screaming, appellant hit her several times in the face, breaking multiple bones. Appellant later pushed H.T. out of the car. A bystander called an ambulance for her, and she was admitted to Howard University Hospital.

Before the ambulance arrived, H.T. described her assailant as "tall, wearing a cap on his head, and clean-shaven." She also gave the police officer the tag number of his vehicle.

At the hospital, H.T. was treated for several broken bones in her face, and severe injuries to her rectum. Two police detectives visited H.T. at the hospital. She identified one of the officers as her assailant. Later, she noted that she was "drugged up" (on narcotic pain medication) at the time, and had made the statement because the officer was wearing clothes and a hat similar to that worn by her assailant. She subsequently identified a photograph of appellant from photographs presented in a photographic array; she also identified a photograph of appellant's van. She, too, was not requested to attend a lineup.

### D.

### Other Evidence

In addition to the complaining witnesses' testimony, the government offered expert testimony indicating that fibers recovered from clothing worn by both H.T. and R.W. during their respective attacks matched fibers recovered from the carpet of appellant's vehicle. Other evidence showed that blood samples taken from fabric in the van matched O.D.'s and H.T.'s deoxyribonucleic acid ("DNA").

The government also called several police officers, each of whom testified about his or her respective role in the investigation. Officer P. Legrand testified that on the night of February 17th, she stopped appellant's van pursuant to a lookout for a vehicle matching appellant's vehicle in description and tag number. She observed a jar of vaseline and a woman's purse behind

the driver's seat.[1] Detective E. Griffin testified about O.D.'s identification of appellant from the photographic array and the ride to the scene of the offense. Detective K. Rice testified about H.T.'s photographic array identification of the appellant. Detective R. Reid testified about showing photograph arrays to O.D. and H.T.

Appellant testified that in September or October of 1999, while with a prostitute in his van, a police officer confiscated the van for an hour. Appellant testified that the officer told him he found cocaine in the van, but did not arrest him. According to appellant, this occurred several times, on the same dates of the alleged assaults. Appellant stated the same officer again took his van about three or four days before his arrest. As the officer drove the van away, appellant stated that he observed the officer allow a prostitute to enter the vehicle. Appellant admitted, however, that he owned the burgundy van, but denied being with prostitutes besides the one in the fall of 1999.

The defense presented other witnesses as well. Appellant's mother, Rosa Jones, testified that appellant had a mustache and beard since he was a teenager. The defense also presented an individual, W.S., who reported a sexual assault to the police in October 1999. W.S. told the police that she was working as a prostitute in the Northwest area of the city and that she entered a burgundy van driven by a bald-headed black man of a medium build in order to engage in oral sex. She did not indicate whether her assailant had facial hair. During this encounter, the man assaulted her. When the police brought W.S. to a lineup, she did not select appellant. The government did not charge appellant with committing any acts against W.S. On cross-examination, W.S. stated that a few weeks earlier, during preliminary motions, she made an in-court identification of appellant as her assailant, and that upon seeing him once again in the courtroom during trial confirmed her belief that he was her assailant.

At the close of the evidence, the jury found appellant guilty of all counts.

## III.

### Analysis

 Appellant argues that, in violation of the Confrontation Clause of the Constitution, the trial judge prevented him from cross-examining an investigating officer, Detective Reid, with regard to omissions from warrant affidavits and the officer's failure to comply with a Department General Order with respect to identification procedures. By precluding his efforts to show bias on the part of the officer, appellant asserts that he was denied the opportunity to demonstrate that the investigation in the case was incomplete and lacked integrity. He also urges that the excluded evidence would have enabled the jury to make a more informed assessment whether the detective was biased against appellant and whether the complainants were improperly influenced by such bias.[2]

1. During an interview with Detective Reid, appellant acknowledged that he had picked up a prostitute the day H.T. was attacked. When the woman tried to reach into his pocket, he kicked her out of the van. He also admitted that after driving away, he noticed her purse in the van, drove back to her, and threw it out the window to where she was lying. Appellant later recanted this episode which he had earlier described.

2. Appellant also contends that the aggravated assault count and the aggravated assault while armed count against H.T., one of the complaining witnesses, stem from a single and continuous course of conduct and therefore should merge. The aggravated assault

The Confrontation Clause of the Sixth Amendment gives the accused the right to be confronted with witnesses against him. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This right includes the opportunity to cross-examine opposing witnesses. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Once sufficient cross-examination has occurred to satisfy the Sixth Amendment, however, the trial judge may curtail cross-examination because of concerns of harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant, without violating a defendant's rights under the Confrontation Clause. *Van Arsdall, supra*, 475 U.S. at 679, 106 S.Ct. 1431; *Springer v. United States*, 388 A.2d 846, 854–55 (D.C.1978). Bias is a permissible subject during cross-examination. *See McGriff v. United States*, 705 A.2d 282, 285 (D.C.1997). Bias is relevant in discrediting the witness and affecting the weight of the testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). A trial judge may not prohibit all inquiry about an event that a jury might reasonably have found caused bias. *Van Arsdall, supra*, 475 U.S. at 679, 106 S.Ct. 1431. Therefore, a violation of the Confrontation Clause occurs when a defendant shows "he was prohibited from engaging in otherwise appropriate cross-examination designed to show ... bias on the part of the witness...." *Id.* at 680, 106 S.Ct. 1431. A party should be allowed to expose to the jury the facts from which jurors could draw inferences relating to the reliability of the witness. *Davis, supra*, 415 U.S. at 318, 94 S.Ct. 1105.

In this case, appellant tried to show the bias of Detective Reid against him with regard to the omission of facts in his sworn affidavits in support of the warrants, and his testimony bearing on identification procedures. Detective Reid submitted sworn affidavits stating the complaining witnesses' descriptions of appellant, but omitted (1) R.W.'s description of her assailant being six feet two inches tall, clean-shaven, and twenty to twenty-seven years old, (2) H.T.'s identification of the other officer as her assailant, and (3) W.S.'s description of her assailant as six feet tall, bald, and two hundred pounds. The trial judge found that Detective Reid made serious omissions from his warrant affidavits, but nevertheless precluded cross-examination about Detective Reid's failure to include exculpatory material in his affidavits on the basis of relevance.

Additionally, appellant argues that in violation of General Order 304.7, Detective Reid did not take O.D. or H.T. to view a lineup. The General Order requires that when an arrest is made after a photographic identification, the officer shall request an order that the defendant appear in a live lineup. *See* General Order 304.7(H)(4). Further, when a suspect arrested in one case is thought to be respon-

---

count relates to punching H.T. in the face, while the count of aggravated assault while armed relates to forcing a bottle into H.T.'s rectum.

We review merger claims *de novo* to determine whether a violation of the Double Jeopardy Clause of the Fifth Amendment occurred. *See Nixon v. United States*, 730 A.2d 145, 151–52 (D.C.1999). When there is an appreciable period of time between criminal acts, or when a subsequent criminal act is the result of a fresh impulse, the acts are considered separable for purposes of merger analysis. *Hanna v. United States*, 666 A.2d 845, 852–53 (D.C.1995). In this case, first appellant forced a bottle into H.T.'s rectum and then he removed it. She then saw the bottle and began to scream. His second impulse, separated by a "fork in the road," was punching her in the face. Because appellant's assaults on H.T. were separated by a fresh impulse, they do not merge.

sible for other, similar crimes, the officer shall request an order that he appear in a lineup to be viewed by witnesses in the other cases. *See* General Order 304.7(I)(4). The trial judge precluded cross-examination of Detective Reid's investigation in this respect, indicating that he did not want to "put this police officer on trial for how he investigated this case."

 Our standard of review regarding questions of this nature "depends upon the scope of cross-examination permitted by the trial court measured against our assessment of the appropriate degree of cross-examination necessitated by the subject matter . . . ." *Springer, supra,* 388 A.2d at 855–56. A reasonable restraint on cross-examination is entrusted to the discretion of the trial judge. *Bennett v. United States,* 797 A.2d 1251 (D.C.2002) (citation omitted). "Once a trial judge has allowed enough cross-examination on an appropriate issue to satisfy the Sixth Amendment, limitation on further cross-examination will be reviewed for an abuse of discretion." *Stack v. United States,* 519 A.2d 147, 151 (D.C.1986). However, it is settled that prohibition of all inquiry into the witness' permissible motives for bias will violate the accused's constitutional rights under the Confrontation Clause. *Brown v. United States,* 683 A.2d 118, 126 (D.C.1996) (citations omitted). We will therefore examine the record to determine whether the trial court committed an error of constitutional dimension. *Id.* at 856. If so, we decide whether the error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

 In this instance, in an effort to show that Detective Reid, in particular, was biased against appellant, the jury heard evidence that two of the complaining witnesses were not asked to identify appellant at a lineup procedure. The jury was also aware that some of the prior identifications by the witnesses were less than positive. Similarly, the defense focused upon descriptive information regarding appellant which was omitted from the arrest warrant affidavit. In this context, however, the trial judge precluded all questioning of Detective Reid regarding his compliance with the Department's General Order 304.7. The judge also precluded questioning with respect to possible exculpatory information omitted from the warrant affidavit which might have indicated bias. *See Springer, supra,* 388 A.2d at 856. In these circumstances, the parties join issue on the question whether the judge committed a violation of appellant's Confrontation Clause rights in rendering his rulings. *Jenkins v. United States,* 617 A.2d 529, 532 (D.C.1992). We have said that a trial judge may not prohibit all inquiry into a witness' possible motive for bias about an event or circumstance that a jury might reasonably find as indicative of bias. *Brown v. United States,* 683 A.2d 118, 126 (D.C.1996) (citations omitted). Given the record of this trial, and appellant's theory of the case, we conclude the trial judge erred in violation of the Sixth Amendment in not allowing some inquiry, not unlimited, into the proffered lines of questioning reasonably calculated to demonstrate that the witness sought to obscure the truth due to bias.

 The next inquiry, having found that the trial judge erred, is whether the error was harmless beyond a reasonable doubt. *See Chapman, supra,* 386 U.S. at 24, 87 S.Ct. 824. Whether an error is harmless depends on many factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of

cross-examination otherwise permitted, and ... the overall strength of the prosecution's case." *Van Arsdall, supra,* 475 U.S. at 684, 106 S.Ct. 1431. We ask "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.* To show harmlessness beyond a reasonable doubt, the government must show that (1) appellant would have been convicted without the witness's testimony, or (2) the restricted line of questioning would not have weakened the impact of the witness's testimony. *Springer, supra,* 388 A.2d at 856.

■ Although the trial judge erred in curtailing Detective Reid's cross-examination regarding the arrest warrant affidavits and the General Order, the error was harmless beyond a reasonable doubt. The central witnesses in the prosecution's case were the complaining witnesses. The circumstances surrounding their behavior and testimony regarding respective identification were fully explored before the jury. All of the complaining witnesses identified appellant in court and testified about the out-of-court identifications. The lack of lineup identifications in some instances was made clear. The investigating detectives, though important, were supporting witnesses. The other detectives who were present for the photographic array identification involving O.D. and H.T. testified about the procedure; Detective Reid's testimony in this area was cumulative. The jury had an opportunity to assess Detective Reid's credibility through other questioning and was well aware of the defense's challenge to the integrity of the investigation. After considering the importance of the testimony, the cross-examination permitted, the strength of the government's case, and corroborating, cumulative, and scientific evidence, we find

that the trial judge's error was harmless beyond a reasonable doubt. *See Jenkins, supra,* 617 A.2d at 534.

Accordingly, we affirm the judgment.

*So ordered.*