**Frederick L. BLUNT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 02–CF–595.**

District of Columbia Court of Appeals.

Argued Feb. 11, 2004.
Decided Dec. 30, 2004.

Eric K. Klein, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., Tracey S. Lankler, and Ronald W. Sharpe, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

WASHINGTON, Associate Judge:

After a jury trial, appellant Frederick L. Blunt ("Blunt") was found not guilty of armed robbery and possession of a firearm during a crime of violence,[1] but convicted of the lesser-included offense of robbery.[2] On appeal, Blunt's main contention is that the trial court erred when it deprived him of his Sixth Amendment right to confront a key government witness Donnell Doy ("Doy") by limiting cross-examination. Because we agree with Blunt, we need not address the second issue of whether the court erred in failing to answer the jury's question regarding Doy's status as a prosecution witness and whether he could be prosecuted for this crime in the future.[3] Accordingly, we reverse Blunt's conviction and remand the case for a new trial.

1. Blunt was formally indicted only on the charges of armed robbery in violation of D.C.Code §§ 22–2801 and 22–4502 (2001) and possession of a firearm during commission of a crime of violence in violation of D.C.Code § 22–4504 (2001).

2. In violation of D.C.Code § 22–2801 (2001).

3. Blunt also argues that the government's belated disclosure of the "fact that the complaining witness had identified someone other than Mr. Blunt as the person she believed committed the robbery" violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because Blunt had the opportu-

## I.

On August 13, 2001, the complaining witness, Lisa Richardson ("Richardson"), pulled her car into the parking lot of a liquor store at 18th Street and Benning Road, Northeast, Washington, D.C. Two men, who had been walking in front of Richardson's car, moved out of her way so that she could park her car. After Richardson came out of the store a few minutes later, she again saw one of the men, who was later identified as Doy, standing at the top of the parking lot outside the store. When Richardson arrived at her car, another man approached her from behind, pointed his gun at her, and demanded that she give him her pocketbook. Although he now had covered his face with a black t-shirt, Richardson recognized this man to be the man with whom Doy had been walking when she first drove into the parking lot a few minutes earlier. Richardson saw that he had the same braids in his hair and was wearing the same outfit as when she first pulled into the parking lot (white t-shirt and denim shorts).

After Richardson gave the robber her pocketbook, the man ran away into an alley. Richardson then drove to a nearby church, and upon exiting her car, saw Doy walking down the street. Richardson began to scream at him, saying that he knew who committed the robbery. Doy responded that he knew nothing about the robbery and walked on. After police were called, they took Richardson's statement and obtained descriptions of the two men.

That same day, police located and arrested Doy as the man who had been allegedly standing at the top of the parking lot before Richardson was robbed. After a few hours, Doy gave a videotaped statement identifying Blunt as the man who robbed Richardson. Although Doy admitted that he was in the parking lot at the time of the robbery, he stated that it was Blunt, not he, who robbed Richardson. The case against Doy was "no-papered," meaning that he was not prosecuted for the robbery. He testified for the government in Blunt's trial.

At trial, the prosecutor did not elicit an in-court identification from Richardson, although on cross-examination she identified Blunt apparently unexpectedly as the man who robbed her. Doy was the only government eyewitness to the robbery to identify "Fred" (Blunt) as the robber prior to trial. Doy testified that he and Blunt were merely acquaintances, and that he did not even know Blunt's last name. Doy testified that, on August 13, 2001, Blunt had revealed to him that he intended to commit a robbery. Furthermore, Doy stated that he was with Blunt when Blunt robbed Richardson at gunpoint.

Defense counsel sought to cross-examine Doy about a 2001 second-degree assault charge against him in Maryland that had been put on the "stet" docket.[4] Defense counsel believed that, because a "stet" case in Maryland could be brought back to life (i.e., Doy could face prosecution on the charges), Doy would be biased to testify

---

nity to use this information at trial through questioning of complaining witness Lisa Richardson, we cannot say that there was a *Brady* violation requiring reversal. *See Edelen v. United States*, 627 A.2d 968, 971 (D.C.1993) ("[W]here the defendant receives potentially exculpatory information in time to use it effectively at trial, his conviction will be sustained.").

4. In Maryland, when a case is put on the "stet" docket, it means that the government has elected not to proceed on the indictment against an accused at that time. Generally, a "stet" is not a final determination of the case on the merits, as a prosecutor can later proceed under the same indictment. *See* Maryland Rule 4-248 (2004); *Smith v. State*, 16 Md.App. 317, 295 A.2d 802, 806 (Md.1972).

favorably for the government in this case. The government opposed the line of questioning, stating that the U.S. Attorney's Office for the District of Columbia could not influence another jurisdiction to proceed with the prosecution of a particular defendant. Based on this representation, the court denied the defense request, stating that this was an improper line of cross-examination because cases stay on the "stet" docket in Maryland much longer than they do in the District, and that "those stet docket offenses are not convictions." [5]

On the second day of jury deliberations, the jury sent a note to the court asking for clarification on Doy's status as a prosecution witness. The jury's note read: "Legal question: Since the charges brought against Donnell Doy in relation to this case have been dismissed, can he be charged again? i.e.[,] can he still be brought to trial and face possible jail time for his role in this robbery even though the charges against him have been dismissed?"

After discussing how to proceed with the parties, the trial court decided not to answer the jury's question directly. Instead, the court instructed the jurors to rely on the evidence before them and their memory of the proceedings.[6] The court told the parties (but not the jury) that it was "hesitant" to answer the question because "only the [g]overnment knows whether they can bring the charges back or will bring the charges back and what is the likelihood that the charges will be brought back."

After deliberating, the jury found Blunt guilty of robbery.

## II.

On appeal, Blunt argues that the trial court violated his Sixth Amendment right to confront witnesses when it limited his cross-examination of Doy. Specifically, Blunt argues that he should have been allowed to cross-examine Doy about Doy's pending charges on the "stet" docket in Prince George's County, Maryland. Because those charges could have been revived, Blunt contends on appeal that this line of cross-examination was relevant "to show Doy's additional motivation to fabricate and to attempt to stay in the good graces of the prosecution." Blunt argues that it is immaterial whether or not the U.S. Attorney for the District of Columbia could actually influence the States Attorney for Prince George's County to prosecute Doy; rather it is Doy's subjective belief that controls when assessing his bias to curry favor with the prosecution.

The government argues that Blunt has failed to offer evidence that Doy's Maryland "stet" charges actually gave rise to an independent basis for exploring bias or "somehow influenced Mr. Doy to want to curry favor with the prosecution." Because of Blunt's lack of evidence and his failure to voir dire Doy about his beliefs regarding the U.S. Attorney's ability to influence the Maryland prosecutor, the government argues that it is merely speculative that Doy was biased in favor of the

---

5. It appears that the court based its ruling on the fact that Doy's "stet" charges were not impeachable offenses relevant to general credibility, rather than on whether they were relevant to his bias as a government witness.

6. The court's exact response was:
 All the evidence that has been admitted at trial is before you. And this particular question may or may not have been answered during trial. It's your memory that controls. And for that, you have to rely on your individual memories of the evidence in the case, the evidence being what I told you what it was: the statements and the testimony of the witnesses, the exhibits that were admitted into evidence, and anything else such as the stipulation that I mentioned to you.

government.[7] The government further argues that the potential bias does not flow logically from the facts of the case presented at trial, and that this bias claim is merely cumulative to the defense's cross-examination of Doy for his bias to escape prosecution in the case at bar.

We agree with Blunt that the court erred when it denied him the opportunity to cross-examine Doy about his potential bias to curry favor with the prosecution. Because we find that this error was not harmless beyond a reasonable doubt, we reverse and remand the case to the trial court for a new trial.

## III.

### A. Standard of Review

 The Sixth Amendment of the U.S. Constitution grants a person accused of a crime the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. " 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (quoting 5 WIGMORE ON EVIDENCE § 1395 (3d ed.1940)). Bias cross-examination of a main government witness is always a proper area of cross-examination and is relevant in assessing the witness' credibility and evaluating the weight of the evidence. *Jones v. United States,* 853 A.2d 146, 152 (D.C.2004). Indeed, this type of cross-examination "may be extremely important to the jury's determination of guilt or innocence ... especially [where the witness is] an accomplice or participant in the crime for which the de-

fendant is being prosecuted." *Springer v. United States,* 388 A.2d 846, 855 (D.C. 1978) (citations omitted). Because of the central role cross-examination for bias plays, the court must accord such cross-examination "wide latitude and must not [ ] unduly restrict[ ][it]." *Id.* at 856.

 In reviewing claims of error by the trial court, we focus on the scope of cross-examination the court allows. *Id.* at 855–56. "A trial judge may not prohibit all inquiry about an event that a jury might reasonably have found caused bias." *Jones, supra,* 853 A.2d at 152 (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). "Once sufficient cross-examination has occurred to satisfy the Sixth Amendment, however, the trial judge may curtail cross-examination because of concerns of harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant ...." *Id.* Limitation of cross-examination beyond that sufficient to satisfy the Sixth Amendment will be reviewed for abuse of discretion. *See Stack v. United States,* 519 A.2d 147, 151 (D.C.1986). Therefore, in order for the defendant to successfully allege a confrontation clause violation, he must show "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Van Arsdall, supra,* 475 U.S. at 679, 106 S.Ct. 1431 quoting *Davis, supra,* 415 U.S. at 318, 94 S.Ct. 1105).

7. While Blunt could have asked to voir dire Doy, there is no indication that the trial court would have allowed such an inquiry given the court's earlier ruling precluding such questions. More importantly, given an adequate foundation for the questioning, *see infra* note 9, the defense is not required to try a "dry run" outside of the presence of the jury, but is entitled to have the jury assess the witness' answers, including the predictable denial that he believes the U.S. Attorney can influence events in Maryland.

## B. Discussion

■ In this case, Blunt sought to cross-examine Doy, a key government witness, about Doy's bias due to his relationship with the criminal justice system through his Maryland "stet" charges. The court denied Blunt's request, stating that the Maryland "stet" cases are not convictions, and that the Maryland "stet" cases stay on the "stet" docket for much longer than those in D.C. We conclude that, in denying Blunt the opportunity to cross-examine Doy about his pending Maryland "stet" charges, the trial court disallowed an entire line of cross examination regarding Doy's bias to curry favor with the government. *See Brown v. United States,* 683 A.2d 118, 127 n. 10 (D.C.1996). Furthermore, we find this error to have infringed on Blunt's constitutional rights as an accused. *See id.* (stating that "the improper restriction of an entire line of cross-examination regarding a witness' motive to lie is an error of constitutional dimension").

The type of bias for which Blunt sought to cross-examine Doy was proper and relevant to assessing Doy's motivation to lie in order to curry favor with the prosecution. The purpose of this type of cross-examination "is to attempt to demonstrate that because the witness has a present personal liberty interest with the court system, such as a pending charge or probationary status, the witness may have a motive to curry favor by testifying for the government." *Coligan v. United States,* 434 A.2d 483, 485 (D.C.1981) (citations omitted). In *Coligan,* we held that the trial court erred because it refused to permit *any* cross-examination about an unrelated, pending drug charge against a key government witness. *See id.* (emphasis added). Similarly, in *Washington v. United States,* 461 A.2d 1037, 1038 (D.C.1983), we held that

the trial court erred when it refused to allow the defense to cross-examine a government witness for bias concerning an unrelated, pending, criminal charge. *See id.* In *Washington,* we recognized that it was up to the jury, not the judge or prosecutor, to determine whether the witness' pending criminal charge colored his testimony. *See id.; see also Tabron v. United States,* 444 A.2d 942, 943 (D.C.1982) ("Witnesses impeachable for bias include all those who had a relationship with the court, such as probation, at the time the government was in touch with them during investigation, prosecution, and trial of the crime.").

In this case, at the time of trial, Doy had unrelated pending charges in Maryland for second-degree assault, disorderly conduct, and resisting arrest. Although those cases had been placed on the "stet" docket, meaning that they were not currently being prosecuted, it was clear that the Maryland States Attorney could later seek to revive those charges. *See* Md. Rule 4–248; *LaFaivre v. State,* 338 Md. 151, 656 A.2d 789, 792 (1995) (affirming prosecutor's reactivation of a "stet" charge stating that "where charges have been stetted, the accused remains liable to be proceeded against under the same charging document ...."). In effect the charges were being held in abeyance.[8] Therefore, we find that the "stet" charges with respect to Doy established a potentially adverse relationship to the court system such that he might have had a motive to curry favor with the prosecution.

We are unpersuaded by the government's position concerning the improbability of Doy's actually believing he could be prosecuted on the Maryland charges if he failed to testify favorably for the prosecu-

---

**8.** The record does not reflect why the charges were placed in that status, or what conditions if any Doy agreed to meet in consequence thereof.

tion in Blunt's trial. Blunt, the government argues, "treats all government entities as interconnected, so that charges brought and then held in abeyance in one jurisdiction are automatically subject to influence by a prosecutor in any other jurisdiction in the nation."

Whether the U.S. Attorney for the District of Columbia could *actually* influence the States Attorney for Prince George's County is immaterial, however, because our only concern is Doy's subjective belief. Doy certainly knew of the existence of the charges, and Prince George's County is an immediately neighboring jurisdiction, not "any other jurisdiction in the nation." When evaluating the possibility of bias in adverse testimony, "the objective likelihood of prosecution and the subjective intent of the government to prosecute are irrelevant," *Scull v. United States,* 564 A.2d 1161, 1165 (D.C.1989) (citing *Washington v. United States,* 461 A.2d 1037 (D.C.1983)). Rather, it is the witness' belief that prosecution is possible "that can produce bias." *Id.* It was reasonable in this case to suggest that Doy feared prosecution in Maryland if he did not testify favorably for the government at Blunt's trial because: 1) Doy's "stet" charges in Maryland were in an immediately neighboring jurisdiction and were not stale, *i.e.,* had been brought relatively closely in time to his testimony at Blunt's trial; and 2) he was no doubt aware that the Maryland prosecutor could revive the charges against him. *See* Md. Rule 4–248 ("A charge may not be stetted over the objection of the defendant."). That was a sufficient basis to require the court to permit at least some questioning about them.

■ We also reject the government's argument that Blunt had ample opportunity to cross-examine Doy for bias relating

to his liberty interest, so that questioning of Doy's Maryland charges would have been merely cumulative. Specifically, the government relies on the fact that the court allowed Blunt to cross-examine Doy for bias related to his involvement in the robbery of Lisa Richardson and his fear of being prosecuted in the District of Columbia. Because Blunt had this opportunity, the government argues, the court properly exercised its discretion in limiting questioning about the Maryland charges. Although the government relies on this argument, our cases are not that limiting. As we stated in *Jones,* a trial court "may not prohibit all inquiry about an event that a jury might reasonably have found caused bias." *Jones, supra,* 853 A.2d at 152. We have held before that "even where a trial court has allowed counsel to explore at will the potential ulterior motives of a witness, yet refuses one potentially . . . area [probative of bias], an error has occurred." *Jenkins v. United States,* 617 A.2d 529, 532 (D.C.1992). In *Jenkins,* we found it error for the court to refuse one specific line of cross-examination even where the defense was allowed to question the government witness on several related issues. *See id.; see also Davis, supra,* 415 U.S. at 318, 94 S.Ct. 1105 (finding it error for the trial court to disallow questioning of key government witness about his probation status even where defense questioned witness about his fear of being suspected in connection with case at bar).

Thus, for the reasons stated above, although the court allowed questioning of Doy's bias with respect to his involvement in the D.C. case, the court should have allowed Blunt at least *some* opportunity to question Doy on the pending Maryland charges.[9] It was not unreasonable to infer

---

9. We are satisfied that Blunt met his obligation to lay a proper foundation for the

requested line of cross-examination. In this case, defense counsel proffered details about

that Doy's testimony was motivated by his desire not to be charged by the District and by his fear of having his Maryland charges reactivated. In limiting the cross-examination, therefore, the court infringed on Doy's Sixth Amendment rights. *See Brown, supra,* 683 A.2d at 127 n. 10.

Having determined that the trial court committed an error of constitutional dimension in restricting Blunt's cross-examination of Doy, we now must assess whether that error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In making this inquiry, we must consider whether the government has shown beyond a reasonable doubt that " 'the error complained of did not contribute to the verdict obtained.' " *Williams v. United States,* 858 A.2d 978, 981 (D.C.2004) (quoting *Chapman, supra,* 386 U.S. at 24, 87 S.Ct. 824). Based on our review of the case as a whole, we cannot conclude that the trial court's error in this case was harmless. *See Delaware, supra,* 475 U.S. at 684, 106 S.Ct. 1431 (the several factors that may be considered in determining whether an error is harmless include the strength of the government's case, the presence or absence of corroborating evidence, and the importance of witness to the government's case).

It is clear that the jury was concerned about Doy's veracity and bias with respect to staying in the good graces of the government. This central concern was revealed when, during deliberations, the jury returned a note to the court asking whether Doy could be prosecuted for his participation in the robbery even though his case had been "no papered." The jury specifically asked the court whether Doy could "still be brought to trial and face possible jail time for his role in this robbery even though the charges against him have been dismissed?" Where charges in a neighboring jurisdiction had not been dismissed but were being held in abeyance, this question suggests that the jury might well have found that fact significant. The jury's reluctance to credit Doy's testimony in its entirety was further revealed when, after five days of deliberations, it acquitted Blunt of the charges for which he was indicted and convicted him on the lesser-included offense of robbery.

With respect to his role in the government's case, Doy was no doubt a key witness. He was the only eyewitness to the robbery to affirmatively identify Blunt as the robber prior to trial. At trial, Richardson's in-court identification of Blunt was impeachable given that she told officers prior to trial she would be unable to pick his photo out of an array and that she at one point had identified someone other than Blunt as her robber.[10] Although another witness, Ernestine Rolan, made an in-court identification of Blunt, Rolan was not an eyewitness to the robbery, gave

Doy's "stet" charges in Maryland, and explained defense's belief that Doy might be biased because the "stet" charges could be reactivated should Doy have any trouble with the legal system. Thus, he sufficiently set forth "a reasonable factual foundation or at least a 'well-reasoned suspicion' that the circumstances indicating bias might be true." *Joyner v. United States,* 818 A.2d 166, 171 (D.C.2003) (citations omitted); *see also Scull, supra,* 564 A.2d at 1164 (stating that party must proffer some facts supporting a genuine

belief that the witness is biased in the manner alleged, and also must proffer facts sufficient to allow the trial court to determine whether the proposed questioning is probative of bias) (internal citations and quotation marks omitted).

10. According to testimony, Richardson saw a man on the street before trial, and informed a detective that she had seen her robber. At this time, Blunt was in jail.

inconsistent testimony, and admitted that her ability to observe had been impaired.[11] Finally, the government was able during closing arguments to forcefully argue that Doy had no motive whatsoever to lie; an assumption that the Maryland stet charges would have enabled the defense to challenge.

The government points out that, at trial, Doy admitted to having a prior robbery conviction and was questioned about his participation in the robbery with Blunt. These factors, while relevant to assessing Doy's credibility, do not diminish the potentially significant impact the exposure of the Maryland stet charges could have had on the jury's determination of Doy's bias. We cannot say beyond a reasonable doubt, therefore, that the court's error did not contribute to the verdict obtained. Based on the foregoing factors, we cannot deem the error in this case to be harmless.

Because we find the trial court erred, and the error was not harmless beyond a reasonable doubt, we reverse Blunt's conviction and remand the case to the trial court for a new trial.

*So ordered.*

---

**11.** While Ms. Roland testified that she saw someone she recognized from the neighborhood as "Fred" in the alley with a pocketbook on the day of the robbery, her testimony at trial was significantly impeached by her prior grand jury testimony and she acknowledged at trial that her view of the alley was partially obstructed by the screen on her porch, a tree and a high fence.