Ronald D. COLES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 09–CF–791, 09–CF–792.

District of Columbia Court of Appeals.

Argued Dec. 15, 2011.
Decided Feb. 2, 2012.

Shilpa S. Satoskar, Public Defender Service, argued the cause for appellant. James Klein and Samia Fam, Public Defender Service, and Corinne Beckwith, Public Defender Service at the time, were on the brief for appellant.

Angela G. Schmidt, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Mary B. McCord, and Matthew Graves, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Appellant Ronald Coles challenges his convictions for aggravated assault, resisting a police officer, and various offenses related to his illegal possession of a firearm and ammunition, claiming that the trial court violated his Sixth Amendment rights by precluding him from pursuing certain lines of cross-examination. We agree, and therefore reverse all but one of his convictions and remand for a new trial.[1]

## I. Factual Background

On April 3, 2007, Metropolitan Police Department officers Hopper, Carey, and Pappas were patrolling the Trinidad neighborhood when they observed Mr. Coles and another man walking down the street while holding styrofoam cups. Suspecting that the cups might contain alcohol in violation of the District's open container law, D.C.Code § 25–1001(a)(1) (2001), one of the officers asked the men what was in them. Appellant Coles "immediately bolted." As he ran away, Officer Hopper noticed that appellant was holding one hand in front of his midsection as if he were carrying a firearm in his waistband. The officers pursued Mr. Coles and, once they caught up with him, officers Hopper and Carey attempted to arrest him. During the ensuing struggle, both Mr. Coles and Officer Hopper were shot, purportedly by a single bullet which passed through Officer Hopper's calf before lodging in Mr. Coles' thigh, where it remains. A Glock 22 (.40 caliber) pistol containing an expended cartridge was recovered from the scene.

At trial, the prosecution sought to prove that Mr. Coles had been carrying the Glock 22 pistol and had fired it during the struggle, resulting in the injuries to both men.[2] The defense argued that one of the police officers had unjustifiably shot Mr. Coles, and that the three officers then colluded amongst themselves to cover up the shooting. According to the defense, the physical evidence suggested that the officers had fabricated their stories. For instance, the defense argued that a single bullet fired from a gun near Mr. Coles' waist could not have traveled down to hit Officer Hopper's calf and then journeyed back up to lodge in Mr. Coles' thigh.

---

1. Because we reverse based on the appellant's first claim of error, we do not reach his other claims.

2. The police officers were carrying Glock 9–millimeter firearms that had been issued to them by the Metropolitan Police Department. They denied having any other weapons, and an examination of their service weapons by a police investigator indicated that those pistols had not been fired.

To support its theory of a cover-up, the defense brought out numerous inconsistencies in the officers' stories, including their testimony about the way Mr. Coles had held his hands while running, whether and when Officer Hopper had yelled "He's got a gun," and how Officer Hopper was positioned when the gun went off. The defense also emphasized the officers' motives to lie and their opportunity to collude by highlighting that the three officers worked together everyday, had "each other's backs," and admitted that they had talked about the shooting to try to figure out how both individuals had been shot.

In addition, the defense sought to demonstrate that Officer Hopper had a motive to hide his own misconduct and thereby avoid disciplinary action. Officer Hopper admitted that he had drawn his firearm while pursuing Mr. Coles. Over the prosecution's objection, the trial court permitted the defense to cross-examine Officer Hopper about two police regulations that may have prohibited him from drawing his weapon in these circumstances.[3] However, the court prohibited cross-examination about other police regulations that require officers to "immediately" file a report when they draw and point their firearms[4]

and to be sequestered during the resulting investigation.[5] The court concluded that these latter regulations were not relevant to whether Officer Hopper had a motive to alter his testimony. Moreover, deviation from these regulations would not tend to prove that the officers had colluded. The defense was thus precluded from eliciting testimony regarding Officer Hopper's three-week delay in filing his report, whether he had copied portions of his report from that prepared by Officer Carey, and whether he and the other officers had spoken about the incident in violation of a regulation requiring sequestration. However, the defense was permitted to use the officer's report to impeach his trial testimony.

After a day of deliberation, the jury returned partial verdicts convicting Mr. Coles of failing to appear on the original date for trial,[6] but acquitting him of assault with a dangerous weapon[7] and a related count of possession of a firearm during a crime of violence.[8] The next morning, the jury sent out a note stating that it was unable to reach unanimous verdicts on the remaining seven counts. The jury resumed deliberations after receiving an anti-deadlock instruction and ultimately

---

**3.** *See* MPD General Order 901.01(IV)(A) (Oct. 7, 2002) ("No member shall draw and point a firearm at or in the direction of a person unless there is a reasonable perception of a substantial risk that the situation may escalate to the point where lethal force would be permitted. When it is determined that the use of lethal force is not necessary, as soon as practicable, firearms shall be secured or holstered.") *See also* MPD General Order 901.07(IV)(B), (V)(D)(1)(b) (Oct. 7, 2002) (same); *id.* at (IV)(G) ("Any violation of these rules will subject members to disciplinary action.").

**4.** MPD General Order 901.07(VI)(2) ("Members shall notify their supervisor and complete a PD Form 901–e (Use of Force Incident Report) immediately following any use of

force, receipt of an allegation of excessive force, or immediately following the drawing of and pointing a firearm at or in the direction of another person."); MPD General Order 901.08(IV)(E), (V)(B)(1)(a) (Oct. 7, 2002) (same).

**5.** MPD General Order 901.08(V)(D)(2)(b) ("Officers involved in a use of force incident shall be sequestered until they are interviewed by a member of [the Force Investigation Team] or by appropriate supervisory personnel.").

**6.** D.C.Code § 23–1327(a) (2001).

**7.** D.C.Code § 22–402 (2001).

**8.** D.C.Code § 22–4504(b) (2001).

convicted Mr. Coles of all of the remaining charges: aggravated assault while armed;[9] assaulting, resisting, or interfering with a police officer while armed;[10] two counts of possession of a firearm during a crime of violence;[11] carrying a pistol without a license;[12] possession of an unregistered firearm;[13] and unlawful possession of ammunition.[14]

## II. Legal Framework and Analysis

Mr. Coles claims that the trial court violated his Sixth Amendment right to confront the witnesses against him when it prohibited him from pursuing lines of cross-examination that (he claims) would have provided evidence that the government's key witness colluded with other officers to cover up his own misconduct. These topics included Officer Hopper's delay in filing an internal police report, the inference that portions of his report were copied from Officer Carey's report,[15] and that Officer Hopper had spoken with other officers about the incident in violation of sequestration regulations. Because we agree that Mr. Coles had a constitutional right to pursue some, though not all, of this cross-examination, and because we further conclude that the preclusion of that cross-examination was not harmless beyond a reasonable doubt, we reverse all but one of his convictions[16] and remand for a new trial.[17]

### A.

■ "The Sixth Amendment grants an accused the right to confront and cross-examine the government's witnesses against him." *Gardner v. United States,* 698 A.2d 990, 996 (D.C.1997). "Cross-examination 'is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Gaines v.*

---

9. D.C.Code §§ 22–404.01, –4502 (2001).

10. D.C.Code §§ 22–405, –4502 (2001).

11. D.C.Code § 22–4504(b) (2001).

12. D.C.Code § 22–4504(a) (2001).

13. D.C.Code § 7–2502.01 (2001).

14. D.C.Code § 7–2506.01(3) (2001).

15. The government claims that Mr. Coles failed to preserve this particular argument for appeal. When the trial judge initially ruled, in the midst of Officer Hopper's testimony, precluding cross-examination on the similarity between the reports by officers Hopper and Carey, she suggested that she might reconsider her ruling if Officer Carey testified. The defense did not request reconsideration after Officer Carey took the stand. However, as we read the record, it appears that the trial court mistakenly believed that Officer Carey's internal police report was merely *Jencks* material that would become relevant only if Officer Carey testified. *See Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); 18 U.S.C. § 3500 (2006) (the Jencks Act); Super. Ct.Crim. R. 26.2 (implementing the Jencks Act). In fact, the defense offered this report as evidence of collusion between Officer Hopper and his partners, a point which the defense clarified when it renewed its request after Officer Pappas testified. The reports were therefore relevant even in the absence of testimony by Officer Carey, and it was error to condition further consideration of this line of cross-examination on whether Officer Carey testified.

16. The conviction for failing to appear on the original trial date did not depend on Officer Hopper's testimony and therefore is not affected by our decision.

17. In addition to his claim that the court improperly curtailed cross-examination, Mr. Coles argues: (1) that the trial court erred by admitting two Certificates of No Record, without testimony from the officials who searched the records, to prove that appellant had no license to carry a pistol and that no firearm was registered to him; and (2) that his two convictions for possession of a firearm during a crime of violence should merge. Because we reverse based on the appellant's first claim, we do not reach these other claims of error.

*United States,* 994 A.2d 391, 399 (D.C. 2010) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). "[T]he opportunity for meaningful cross-examination therefore 'is critical for ensuring the integrity of the factfinding process[.]'" *Id.* (quoting *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)).

 Bias or motive to lie "may be a crucial component in the jury's assessment of the credibility of a witness, and thus is always a proper subject of cross-examination." *In re C.B.N.,* 499 A.2d 1215, 1218 (D.C.1985) (internal quotation marks omitted). Nonetheless, "[t]he Sixth Amendment 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'" *Lewis v. United States,* 10 A.3d 646, 653 (D.C.2010) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)) (emphasis in original). "Once sufficient cross-examination has occurred to satisfy the Sixth Amendment, ... the trial judge may curtail cross-examination because of concerns of harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant, without violating a defendant's rights under the Confrontation Clause." *Jones v. United States,* 853 A.2d 146, 152 (D.C.2004). The Sixth Amendment is violated "only when the court precludes a 'meaningful degree of cross-examination.'" *Jordan v. United States,* 18 A.3d 703, 710 (D.C.2011) (quoting *Flores v. United States,* 698 A.2d 474, 479 (D.C. 1997)).

 "To make cross-examination based upon witness bias effective (and thus satisfy the Sixth Amendment), defense counsel must be 'permitted to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Lewis,* 10 A.3d at 654 (quoting *Davis,* 415 U.S. at 318, 94 S.Ct. 1105). A trial court therefore errs when it precludes the defense from pursuing a line of cross-examination that is necessary to enable the jury to meaningfully evaluate the witness's credibility. It is not enough that the possibility of bias has been mentioned. *See Davis,* 415 U.S. at 318, 94 S.Ct. 1105 (holding cross-examination on bias inadequate where "counsel was permitted to ask [a witness] *whether* he was biased" but "was unable to make a record from which to argue *why* [that witness] might have been biased") (emphasis in original); *Jenkins v. United States,* 617 A.2d 529, 532 (D.C. 1992) (cross-examination on witness's upcoming sentencing insufficient where defense was precluded from eliciting nature of the crime, because without knowledge of the severity of the potential sanction the jury could not assess extent to which the witness might be induced to "shade his trial testimony to curry the government's favor"). Defense counsel must be able "to elicit enough information to allow a *discriminating* appraisal of the witness's motives and bias." *United States v. Graham,* 317 U.S.App.D.C. 418, 426, 83 F.3d 1466, 1474 (1996) (internal editing omitted and emphasis added); *see also Martinez v. United States,* 982 A.2d 789, 796 (D.C. 2009) (cross-examination of police officer on his status as the subject of an internal investigation was insufficient where court precluded additional questioning on potential sanctions); *Jones,* 853 A.2d at 153 (preclusion of cross-examination on police officer's lack of compliance with internal regulations and failure to include exculpatory information in warrant affidavit violated Sixth Amendment despite admission of other evidence on these issues).

In this case, defense counsel repeatedly sought to cross-examine Officer Hopper about various police regulations and an internal report he had written, arguing that these questions went to the officer's "bias." Bias is a broad term that may refer "both to a witness' personal bias for or against a party and to his or her motive to lie." *McCloud v. United States*, 781 A.2d 744, 752 (D.C.2001) (quoting *Brown v. United States*, 683 A.2d 118, 124 n. 7 (D.C.1996)). But in this context— where some of the proffered questions were relevant to exposing a motive to lie (or "curry favor") and others potentially would elicit direct evidence of collusion— defense counsel's repeated use of the generic term "bias" and his failure to clearly articulate the separate rationales behind these lines of questioning were confusing.

Some of the cross-examination requested by the defense, including questions about police regulations that require reports to be filed "immediately" and officers to be sequestered during an investigation, was properly excluded. The regulations requiring an officer to "immediately" submit a report after drawing a firearm and pointing it at someone do not establish a time limit for doing so or provide for any sanctions if the report is submitted late. *See* MPD General Order 901.07(VI)(2); MPD General Order 901.08(IV)(E), (V)(B)(1)(a). Moreover, as the trial court noted in reaching its decision, Officer Hopper had been shot and thus some delay in the submission of his report was to be expected. In addition, the responsibility to sequester police officers during a use-of-force investigation is placed on the investigating officer, MPD General Order 901.08(V)(D)(2); no evidence had been presented that Officer Hopper and his partners might have faced discipline merely for

discussing what was clearly an important and perhaps traumatic experience affecting each of them. Finally, inquiry into these regulations would not have been necessary for the defense to effectively cross-examine Officer Hopper on whether he had copied portions of his report from that of Officer Carey. In sum, the trial court reasonably concluded that cross-examination on these two regulations could result in a distracting "mini trial" on collateral issues.

However, the theory behind the proposed cross-examination about the striking similarities between the reports written by officers Hopper and Carey was different. When the defense renewed its request after officers Hopper and Pappas had testified, see *supra* note 15, it clarified that this proposed line of questioning was "not about the general orders," but rather "the similarities between [Officer Hopper's] Use of Force Report and [that of] Officer Carey." These similarities, the defense argued, demonstrated that Officer Hopper had copied Officer Carey's report and were therefore "evidence of corruption." The court, however, in reaffirming its earlier ruling, remained focused on whether the alleged copying would have violated police regulations. Because it might be permissible under police regulations for one officer to copy the report of another, the court also concluded that, even if copying occurred, that did not reasonably lead to the inference that the officers had "colluded."

Our decisions in *Martinez, Jones,* and *Jenkins* persuade us that the appellant was entitled to cross-examine Officer Hopper about whether he had substantially copied his internal police report about the shooting from Officer Carey's report.[18]

18. More than one-third of the sentences of Officer Hopper's narrative were word-for- word identical to those in Officer Carey's description, including the key sentences re-

Although Mr. Coles was permitted to pursue other lines of cross-examination regarding the officers' credibility—including inconsistencies in the officers' stories, the potential violation of police regulations on the handling of firearms, and the fact that the officers worked together every day and had spoken to each other about the shooting—all of this evidence went to the officers' *motive* or *opportunity* to lie. By contrast, Mr. Coles was prohibited from eliciting evidence—the seemingly copied report—from which a jury might have concluded that the police officers had actually taken steps to conform their explanations of the shooting. As the only concrete, as opposed to speculative, fact indicative of such behavior, this was arguably the most powerful evidence of collusion among the officers. Of course, this comparison of the reports does not establish that the officers' testimony was untrue, but the jury was entitled to make that assessment of credibility. Without this evidence, "the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness." *Davis*, 415 U.S. at 318, 94 S.Ct. 1105.

In order to effectively cross-examine the officer about the two reports, the defense should have been permitted, at a minimum, to inquire about the order in which the reports were submitted, the striking similarities between the two reports, and Officer Hopper's reason for apparently copying the report rather than writing down his own version of events in which he had been involved. Some limited inquiry into whether and how Hopper had gained access to the earlier report would also have been appropriate. Without providing an exhaustive list of the questions the defense should have been permitted to pose, we conclude that this inquiry was necessary "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Lewis*, 10 A.3d at 654 (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. 1105).

**B.**

 Having found that Mr. Coles' Sixth Amendment rights were violated, we must next determine whether that error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "Whether an error is harmless depends on many factors, including 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case.'" *Jones*, 853 A.2d at 153–54 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

 Since Officer Hopper was the key government witness at trial, the excluded evidence might have taken on "enhanced significance" in the jurors' minds, *see Cunningham v. United States*, 974 A.2d 240, 245 (D.C.2009), and, when added to the other evidence, might have caused them to have a reasonable doubt about Mr. Coles' guilt. This is particularly so since the government's case, though strong, left a lot of questions unanswered in light of the enigmatic physical evidence and the inconsistencies in the officers' testimony—

---

counting the struggle with Mr. Coles. In addition, Officer Hopper's report omits actions that only he would have observed, such as his chase of Mr. Coles through an alley, that one might have expected Officer Hopper to include if he had been writing the report only from his memory.

circumstances which might explain the jury's acquittal on two counts and its initial deadlock on several others. Because we cannot say "(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony," *Jenkins*, 617 A.2d at 533, we reverse all of Mr. Coles' convictions which rested on Officer Hopper's testimony.[19]

### III. Conclusion

For the foregoing reasons, we reverse Mr. Coles' convictions, except that for failing to appear before the court on the original date for trial, and remand for further proceedings.

*So ordered.*

---

19. Mr. Coles asks this court to vacate, rather than remand, "his CPWL and UF convictions on the grounds of insufficient evidence...." The government concedes that these convictions must be set aside because the Certificates of No Record were admitted improperly. See *supra* note 17. But retrial of these counts is not precluded because the evidence at trial was sufficient to prove these offenses. Consequently, a remand is the proper remedy. See *Lockhart v. Nelson*, 488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) ("[W]here the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial."); *Tabaka v. District of Columbia*, 976 A.2d 173, 176 (D.C. 2009) (reversing conviction that was based on Certificate of No Record and remanding for further proceedings).