**Ricardo CUNNINGHAM, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 06–CF–595.

District of Columbia Court of Appeals.

Argued March 17, 2008.

Decided June 25, 2009.

James E. Drew appointed by the court for appellant.

Anne Y. Park, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, Roy W. McLeese III and Lisa H. Schertler, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

After a bench trial, Appellant Ricardo Cunningham was convicted of one count of possession of marijuana in violation of D.C.Code § 48–904.01 (2001). On appeal, he contends that (1) the evidence was insufficient to convict him; and (2) the trial judge erred by denying his right to cross-examine, as to bias, the key government witness, a police officer, regarding the officer's motive to curry favor by testifying because he was under investigation for the alleged use of excessive force. We conclude that the evidence was sufficient to support the conviction; however, we remand for further inquiry by the trial court to determine whether the officer was aware of the pending investigation against him. Such knowledge arguably would provide a motive for him to curry favor with the government.

## I.

Mr. Cunningham was observed by three undercover police officers in the driver's seat of a grey, older model Ford conversion van parked in a parking lot of an apartment complex. Metropolitan Police Department ("MPD") Officer Angelo Battle saw Mr. Cunningham in the driver's

seat wearing a black jacket, a black shirt, and black pants. Officer Battle saw another passenger in the front seat of the vehicle rolling what appeared to be "a blunt or marijuana cigarette." The officer contacted members of the arrest team[1] and issued a lookout.

As the arrest team entered the parking lot and approached the van, Mr. Cunningham exited the vehicle and began to run through the parking lot. Officer Whaley saw him "make this kind of motion, lean down to the center console[,] and then open the door, jump out [of] the vehicle[,] and run, fleeing from the vehicle."[2] Officer Whaley believed that Mr. Cunningham was "[t]aking off a jacket and moving something around the center console area or dropping something." Officer Mason, along with other officers, chased down Mr. Cunningham on foot and brought him back to the van. When he was returned to the van, he was wearing a black shirt and black pants.

While other officers were chasing Mr. Cunningham, Officer Whaley approached the van and blocked the passenger-side door, preventing other occupants of the van from exiting. He noticed a jacket on the driver's seat. Officer Mason also saw a jacket on the driver's seat that looked "like somebody took it off and laid it right there on the driver's seat." The officers searched the jacket and recovered three bags containing a green weed-like substance and empty ziplock bags from the jacket pockets. Officer Mason also observed that there were other items of clothing strewn throughout the van, including another coat on the right rear passenger seat and a pair of pants on the front passenger seat. Officer Whaley kept "his eye on the [jacket] in which the drugs were found" and "he did not see anyone else [in the van] touch the jacket."

Moments before Officer Whaley testified at trial, the government alerted the court and defense counsel to a Lewis[3] issue relating to the officer. Officer Whaley was being investigated for the use of excessive force in an incident that occurred in March 2006. The government explained to the trial court that the officer believed that the subject of the investigation was "someone else in his chain of command," and he was merely "on the witness list" and had in fact testified against someone else also under investigation. The government asserted that Officer Whaley "ha[d] no idea that the United States ("U.S.") Attorney's Office [was] investigating him" and requested that "no inquiry be made of the officer" concerning the investigation, so as not to alert Officer Whaley of the ongoing investigation against him.

Mr. Cunningham's trial counsel countered, "It seems like we should be able to

---

1. The arrest team consisted of MPD Officers Kevin Whaley, Tony Mason and Jonathan Branch. All three were in an unmarked police car, had their badges out, and were wearing black vests with the word "police" written on the front and back of the vests.

2. The government described the motion demonstrated by Officer Whaley for the record: "[T]here was a rolling of one's shoulders from side to side and then leaning down towards the console area."

3. The "Lewis list" is a computerized list, maintained by the Office of the United States Attorney for the District of Columbia, preserving information that might be used to impeach police officers if they testify. Among other things, it identifies officers who are under investigation. See United States v. Bowie, 198 F.3d 905, 907–08 (D.C.Cir.1999) (citing Lewis v. United States, 393 A.2d 109 (D.C.1978), aff'd, 408 A.2d 303 (D.C.1979) (where this court held that impeachable convictions and/or delinquency adjudications of witnesses are Brady material, and the government is required to disclose such information within its knowledge)).

cross-examine the witness about something that would go to bias, and bias is pretty liberally construed when it comes to corruption and things like that." The court asked counsel what the officer's incentive to curry favor would be if he had no knowledge that he was under investigation. Appellant's trial counsel replied:

> Well, he is aware that there is an investigation going on, and that he is involved in it because he's been a witness in the investigation. And if there is an allegation by someone that he participated in excessive force then he would have every reason to try to curry favor of the U.S. Attorney's Office....

The trial court ruled that the officer did not know about the investigation and had no reason to curry favor. Therefore, the trial court allowed him to testify and instructed that "[w]e don't need to ask the officer about the investigation because he doesn't know anything about it.... "

After closing arguments, the trial court issued its oral findings and credited the testimony of each officer. The court found that Mr. Cunningham's flight and removal of his jacket evinced consciousness of guilt that he possessed illegal controlled substances in his jacket. The court then sentenced him to sixty days' imprisonment.

## II.

■ Mr. Cunningham contends that the evidence was insufficient to convict him of possession of marijuana. He asserts that the trial judge misstated the testimony—that Police Officer Whaley saw him taking off a jacket—and then relied on the misstatement when concluding that he possessed the jacket with the drugs in it. It is undisputed that Officer Whaley never saw Mr. Cunningham take off the jacket, but believed based upon Mr. Cunningham's movements in the van that he was taking off a jacket right before exiting the

vehicle. While Mr. Cunningham concedes that, based on Officer Whaley's observation, the court could have inferred that he took a jacket off, appellant asserts that there is no indication in the record to show the court made such an inference.

The standard of review for a challenge to the sufficiency of the evidence in a criminal case is well established. Our decision in *Smith v. United States,* 809 A.2d 1216 (D.C.2002), clearly sets out the standard and deference we afford trial judges when reviewing a claim for insufficiency of the evidence:

> Our standard of review for claims of evidentiary insufficiency requires that the evidence be viewed in the light most favorable to the government. In applying that standard, we recognize that it is the province of the trier of fact to determine the credibility of the witnesses and to make reasonable inferences from the evidence presented. All reasonable inferences must be drawn in favor of the government, and deference must be given to the [trier of fact's] right to determine credibility and weigh evidence. We continue to adhere to the proposition that the government is not required to negate every possible inference [of innocence] before an accused may be found guilty of an offense beyond a reasonable doubt. It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.

*Id.* at 1221 (alterations in original) (internal quotation marks and citations omitted).

■ To establish possession of a controlled substance, "the government [must] prove beyond a reasonable doubt that the accused: (1) possessed a controlled substance; and (2) that he did so knowingly and intentionally." *Id.* (citing D.C.Code

§ 33–541(d) (1998 Repl.)) (other citation omitted); *see also Olafisoye v. United States*, 857 A.2d 1078, 1087 (D.C.2004). "Proof of possession can be established by either direct or circumstantial evidence." *Smith, supra*, 809 A.2d at 1222 (quoting *United States v. Hubbard*, 429 A.2d 1334, 1338 (D.C.1981)). When reviewing a claim for insufficiency of the evidence, "we make no distinction between direct and circumstantial evidence, and '[c]ircumstantial evidence is not intrinsically inferior to direct evidence.'" *Id.* (quoting *Bernard v. United States*, 575 A.2d 1191, 1193 (D.C.1990)).

We conclude that the direct and circumstantial evidence was sufficient to support the conviction for possession of marijuana. Mr. Cunningham does not challenge that the green weed-like substance found in the black jacket was marijuana. We are therefore left to determine whether there was sufficient evidence to conclude that he knowingly and intentionally possessed it by possessing the black jacket in which the marijuana was found. Although the trial court, in its oral findings of fact, inaccurately stated that Officer Whaley testified that he saw Mr. Cunningham taking off a jacket, the circumstantial evidence supported a finding that Mr. Cunningham had taken his jacket off and left it on the driver's seat—the same jacket in which the marijuana was found. Officer Battle observed Mr. Cunningham wearing a black jacket and black shirt, but when he fled the vehicle he was only wearing a black shirt. Prior to Mr. Cunningham leaving the van, Officer Whaley witnessed what he believed to be Mr. Cunningham "[t]aking off a jacket and moving something around the center console area or dropping something." Officer Whaley and Officer Mason testified that the jacket was draped over the driver's side seat as if someone had taken the jacket off and laid it there. In addition, the court made a finding, which Mr. Cunningham did not challenge, that

fleeing from the van evinced consciousness of guilt that he possessed illegal controlled substances in his jacket. The evidence when viewed as a whole, in addition to the reasonable inferences to be drawn, is sufficient to support the verdict. *See Smith, supra*, 809 A.2d at 1222; see also *Lewis v. United States*, 767 A.2d 219, 222 (D.C. 2001) ("[A] conviction will be overturned only where there has been no evidence produced from which guilt may reasonably be inferred.").

## III.

■ Mr. Cunningham next contends that his conviction should be reversed on the grounds that the trial court violated his Sixth Amendment rights by precluding a line of questioning intended to show Officer Whaley was biased against him. *See Brown v. United States*, 683 A.2d 118, 124 (D.C.1996) (noting that the opportunity to cross-examine adverse witnesses is an inherent component of the defendant's Sixth Amendment right to confront witnesses against him). Bias is a broad concept and may be proven by showing that a witness has a motive to curry favor with one side or the other. *See Blunt v. United States*, 863 A.2d 828, 834 (D.C.2004). Concluding that the present record is insufficient to resolve this issue, we remand for further inquiry.

After notifying the court of the investigation against Officer Whaley, the government insisted that Officer Whaley believed he was merely a witness in that investigation and did not know he was actually under investigation. When Mr. Cunningham's trial counsel argued that this created bias, the court asked Mr. Cunningham's trial counsel why Officer Whaley would seek to curry favor with the government when he did not know he was under investigation. Appellant's trial counsel re-

sponded that "bias is pretty liberally construed when it comes to corruption and things like that. . . ." He further stated that the officer

> is aware that there is an investigation going on, and that he is involved in it because he's been a witness in the investigation. And if there is an allegation by someone that he participated in excessive force then he would have every reason to try to curry favor of the U.S. Attorney's Office. . . .

More artfully, on appeal, Mr. Cunningham contends that "[g]iven the prevalence of leaks and rumors (both accurate and inaccurate rumors), etc., arising from ongoing investigations, only the witness himself would know if he was unaware or unsuspecting that he was a target of the investigation[,][and] the prosecutor has no way of knowing what Officer Whaley did or did not know or suspect." *See Randolph v. United States*, 882 A.2d 210, 217–18 (D.C. 2005) ("[I]f we are dealing with an argument rather than a claim, it may properly be asserted for the first time on appeal.") (citing *West v. United States*, 710 A.2d 866, 868 n. 3 (D.C.1998)).

We have recognized that bias is always a proper subject of cross examination, and the refusal to allow questioning about facts indicative of bias from which the jury could reasonably draw adverse inferences of reliability is an error of constitutional dimension, violating the defendant's rights secured by the Confrontation Clause. *See Coles v. United States*, 808 A.2d 485, 489 (D.C.2002); *see also Brown, supra*, 683 A.2d at 124 (citing *Ford v. United States*, 549 A.2d 1124, 1126 (D.C.1988)). "Moreover, cross-examination seeking to ferret out bias takes on enhanced significance where the credibility of the key government witness is in issue." *Id.* (quoting *Jenkins v. United States*, 617 A.2d 529, 531 (D.C.1992) (internal quotation marks

omitted)). There is no doubt that Officer Whaley was a key witness here.

■■■ "On the other hand, the right to cross-examination is subject to reasonable limits imposed at the discretion of the trial judge, and the extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Brown, supra*, 683 A.2d at 124 (internal quotation marks and citations omitted) (alteration in original). "[T]he trial court may restrict cross-examination within reasonable limits to avoid such problems as harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (internal quotation marks omitted). The trial court may also exercise its discretion to preclude cross-examination where the probative value is outweighed by the prejudicial effect. *Id.*

■■■ In addition, before pursuing a line of questioning suggesting that a witness is biased, a defendant must lay a foundation sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias. *Brown, supra*, 683 A.2d at 124. "In the absence of such a factual foundation, the questioner must articulate a 'well reasoned suspicion' rather than 'an improbable flight of fancy' to support the proposed cross-examination." *Id.* at 125 (quoting *Scull v. United States*, 564 A.2d 1161, 1164 (D.C.1989) (footnote and citations omitted)). Since "an important purpose of cross-examination is exploration, [ ] the trial court must give counsel some leeway to probe for information that she cannot prove before commencing cross-examination." *Id.* (internal quotation marks and citation omitted).

In this case, appellant sought to cross-examine Officer Whaley about his potential bias because he was under investigation

for use of excessive force in the line of duty. The court precluded this line of inquiry based on the government's representation that Officer Whaley did not know *he* was under investigation and therefore could not be motivated to curry favor by testifying favorably for the government. The government's legal theory was sound. We have held that a trial court did not abuse its discretion by precluding cross-examination of a key government witness where it was established that the witness did not know the underlying facts which arguably would create bias. *Ifelowo v. United States,* 778 A.2d 285, 295 n. 13 (D.C.2001) ("Impeachment evidence is not material if the witness does not have knowledge of the underlying fact.") (quoting *Williams v. Scott,* 35 F.3d 159, 162 (5th Cir.1994) (internal quotation marks and citations omitted)). The more difficult question here is whether the government's theory was based on a solid factual premise.

The proffer of Mr. Cunningham's trial counsel lacked a specific factual foundation to suggest that Officer Whaley knew he was a subject of the ongoing investigation. Nevertheless, as the prosecutor disclosed, Officer Whaley was in fact under investigation. Because Officer Whaley was indeed the subject of the investigation (and not merely a witness), it was not unreasonable to conclude that he might have knowledge of the investigation and might be attempting to curry favor by testifying favorably for the government. *See Blunt, supra,* 863 A.2d at 835 (noting that it is the witness's subjective belief that controls). Although the government believed Officer Whaley was not aware of his true status as the subject of the investigation, appellant's counsel appropriately points out that the effectiveness of government attempts to preserve secrecy is frequently overrated, and information sometimes leaks out.

The trial court should have been more skeptical of the government's proffer, asking for more information to support the conclusion that Officer Whaley did not know he was under investigation. It should also have allowed a few carefully-phrased questions to explore whether Officer Whaley was aware of his status, thereby attempting to preserve the secrecy of the government's investigation, without needlessly tipping him off that he was a suspect. Depending on the answers received, and the content of any further information the government provided, further inquiry might or might not have been appropriate.

This court confronted a similar situation in *McCloud v. United States,* 781 A.2d 744 (D.C.2001). There, the adult sons of the government's key witness were accused of sexually abusing the same children the appellant had been accused of abusing. *Id.* at 747–48. The government informed the trial court of the allegations *ex parte* and argued that disclosure to the defense was not required because, among other things, they did not know if the witness was aware of the allegations against her sons. *Id.* at 753. We recognized that the allegations were "potentially highly relevant," *id.* at 752, to the issue of bias, holding "that if the witness knew of the charges against her sons, appellant was denied his right of confrontation." *Id.* at 747. Nevertheless, quoting the same passage from *Ifelowo* that appears above, we decided that it was necessary to remand so that the trial court could "promptly conduct an inquiry as to whether [the witness] was aware at the time of her trial testimony of the allegations of sexual abuse against her sons or the acts underlying those allegations." [4] *Id.* at 754.

---

4. Before remanding in *McCloud,* we paused    to consider "whether the error can be deemed

Here the type of bias for which appellant sought to cross-examine Officer Whaley was potentially relevant.[5] Of further importance is the fact that Officer Whaley was a key government witness. *See McCloud, supra,* 781 A.2d at 752 ("[C]ross-examination seeking to ferret out bias takes on enhanced significance where the credibility of the key government witness is in issue.") (quoting *Jenkins v. United States,* 617 A.2d 529, 531 (D.C.1992) (internal quotation marks omitted) (alteration in original)). However, we cannot discern whether this was an error that infringed on Mr. Cunningham's constitutional rights without remanding for an inquiry into whether, at the time of trial, Officer Whaley was aware of the investigation against him. *See McCloud, supra,* 781 A.2d at 752–54 (noting that harmlessness beyond a reasonable doubt could not be determined without remanding to determine what the witness knew at the time of her testimony). If after cross-examination and other inquiry on remand, the trial court determines that Officer Whaley did not know he was under investigation, then it would be difficult to conclude that the trial court committed error by disallowing cross-examination regarding Officer Whaley's po-

tential bias. See note 4, *supra.* However, if Officer Whaley was aware of the investigation against him, we would need to revisit the issue of whether appellant's constitutional rights were infringed upon, and whether any such infringement was harmless beyond a reasonable doubt.

At this juncture, we see no point in attempting to script an inquiry that would balance the competing interests identified above. Nearly three years after the trial, the investigation should be over and the trial court or counsel may ask the questions directly. In the unlikely event that the investigation is not yet over, the issuance of this opinion will obviate the previous concerns about secrecy.

This matter is remanded to the trial court for further proceedings consistent with this opinion.[6]

*So ordered.*

harmless beyond a reasonable doubt ...," 781 A.2d at 753, and decided that it could not be on the record then before us. *Id.* at 754. As several passages in the opinion make clear, however, we did not conclude that constitutional error had in fact occurred. *See, e.g.,* 781 A.2d at 747 ("The court holds that *if* the witness knew of the charges against her sons, appellant was denied his right of confrontation."); *id.* at 752 (the investigation of sexual abuse by the brothers "was *potentially* highly relevant to Mary Ishmell's bias."); *id.* at 753 (referring to "our holding that appellant's Sixth Amendment right of confrontation *may have been* violated ....") (emphasis added in each instance). In context, the harmlessness inquiry was an attempt to determine whether, assuming error, a remand could be avoided. In the end, it could not be avoided, and the

purpose of the remand was to determine whether any error occurred at all.

5. Although Mr. Cunningham's trial counsel, as distinguished from *McCloud,* attempted to make a proffer, the proffer lacked any specific factual foundation to indicate that Officer Whaley knew he was the subject of the investigation, and this proffer was too speculative as to the key fact that went to potential bias.

6. We reject appellant's argument, raised for the first time on appeal, that the trial court should have permitted cross-examination on the theory that the details of the excessive-force allegations would have shown that Officer Whaley was so hostile to drug dealers that he would commit illegal acts to cause them harm.