Jonathan BLADES, Appellant,

v.

UNITED STATES, Appellee.

No. 08–CF–849.

District of Columbia Court of Appeals.

Argued Sept. 15, 2010.
Decided July 14, 2011.

Christopher Kemmitt, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Anne Y. Park, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, Roy W. McLeese III, Elizabeth Trosman and Douglas Klein, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, REID, Associate Judge, Retired,* and Steadman, Senior Judge.

STEADMAN, Senior Judge:

In this appeal, appellant Jonathan Blades contends that the trial court violated his Sixth Amendment right to confront witnesses against him by entirely precluding cross-examination of the government's key witness, James Bell, for bias. We agree with the appellant. Accordingly, we reverse his convictions [1] and remand for a new trial.

## I.

Appellant's conviction depended solely on the testimony of Bell, the only eyewit-

---

* Judge Reid was an Associate Judge at the time of argument. Her status changed to Associate Judge, Retired on April 7, 2011.

1. Appellant was convicted by a jury of carrying a dangerous weapon (CDW) in violation of D.C.Code § 22–4504(a)(1) and possession of a prohibited weapon (PPW) in violation of D.C.Code § 22–4514(b) in connection with the fatal stabbing of Charles Smith. The jury returned a verdict of "not guilty" for appellant's third charge, second-degree murder while armed in violation of D.C.Code §§ 22–2103–4502.

ness to testify. In a nutshell, Bell testified that he saw appellant stab Charles Smith on June 27, 2006, at approximately 12:45 p.m. in front of 2841 Gainesville Street, Southeast, Charles Smith died shortly thereafter.

On direct examination, Bell testified that he was "on very good terms" with appellant, he had never had any negative incidents with appellant, he did not harbor any "grudges or beefs" against appellant, he had no reason to fabricate his testimony against appellant, and that appellant was "like family" to him.

During the cross-examination of Bell, defense counsel elicited that Bell had a stepson, Franklin King, who was shot a few years prior to the events giving rise to this case. The government objected to the line of questioning on the basis of relevance. Defense counsel argued that the inquiry was relevant as it would show that Bell, the government's key witness, was biased against appellant. Counsel contended that this was a crucial area and proffered:

> [Appellant] was a witness. [Appellant] refused to testify. He was essentially the only witness, and he refused to testify against the shooter of [Mr. Bell's] son. . . . Mr. Bell witnessed the shooting, is unable to identify the shooter[.] Mr. Bell, in terms of what he saw, saw the shooter shooting at [appellant]. [Appellant] ran from the shooter. [Appellant] was then being investigated as a potential witness. . . . [D]uring the shooting, this witness' son, essentially, because he's known the son since birth . . . was shot as sort of an innocent bystander.

Defense counsel informed the court that it was his "good faith basis . . . that [Bell was] going to say [that] [appellant] never testified or participated in any investigation to try to arrest the shooter of his son." Counsel argued that the question of whether Bell was in fact biased was a fact for the jury to find. Counsel stated:

> If [Bell] says [that he is not biased against appellant], the jury could disbelieve him. I think it's very—if a person's child is shot and the essentially sole witness is refusing to cooperate, and that person who did see the shooting can't identify the shooter, that is some serious bias. . . . [Bell] can deny it all he wants, but the jury can assess his credibility as to that denial in terms of the facts that establish that bias and in terms of his demeanor on the witness stand. . . . I think that's the bias that we have, Your Honor, in this one-witness case, and it's important.

In the colloquy that followed, the court asked defense counsel whether he had any evidence other than the fact that appellant was present when Bell's son was shot. The court asked whether counsel had any interviews, testimony, or statements that suggested Bell knew that appellant knew who the shooter was, or that Bell was angry because appellant didn't testify or identify the person who shot Bell's son. Defense counsel responded that Bell would testify that "[appellant] was being shot at by the person. [Appellant] was running away, and the person was running after him, shooting him. . . ." Counsel also stated that he didn't have a statement that established that Bell was angry because appellant didn't testify or identify his son's shooter, but reiterated that ultimately, the jury is to decide whether Bell holds any bias against appellant.[2] "I need to lay out

---

2. As the trial proceeded, however, it became apparent that defense counsel possessed evidence of the sort the court had been seeking.

During the defense's case, while appellant was on the stand, defense counsel told the court that appellant would testify that around

the facts to give the jury the opportunity to assess the bias."

The court ruled that the defense theory of bias was "far-fetched" and "too speculative." Counsel was precluded from questioning Bell about any potential hostile feelings he may have harbored against the defendant based on his son's shooting. Defense counsel reiterated that the bias cross-examination was crucial. Counsel told the court, the case "rises and falls on this, and I just want to make clear how important [the bias] evidence is for the record." [Id.]

## II.

■ "The Sixth Amendment to the Constitution guarantees the criminal defendant the right to confront the witnesses against him." [3] (*Melvin*) *Brown v. United States*, 952 A.2d 942, 949 (D.C.2008); *see Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (the Sixth Amendment guarantees the cross-examination of adverse witnesses). The Sixth Amendment "particularly protects the defendant's right to demonstrate a witness' motivation or bias in testifying for the government." *Washington v. United States*, 461 A.2d 1037, 1038 (D.C.1983) (citations omitted). As we recently reaffirm-ed, " 'the complete denial of the opportunity to cross-examine a witness as to bias' " violates a defendant's constitutional rights. (*Hernan*) *Melendez v. United States*, 10 A.3d 147, 151 (D.C.2010) (citations omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("By thus cutting off all questioning about an event ... [from which] a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."). That is, "the refusal to allow questioning about facts indicative of bias which the jury could reasonably draw adverse inferences of reliability is an error of constitutional dimension, violating the defendant's rights secured by the Confrontation Clause." *See Cunningham v. United States*, 974 A.2d 240, 245 (D.C.2009).

■ It is true that "before pursuing a line of questioning suggesting that a witness is biased, a defendant must lay a foundation sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias." *Cunningham*, 974 A.2d at 245 (quoting *(Rocky) Brown v. United States*, 683 A.2d 118, 124

---

the time of Smith's stabbing, when appellant saw Bell, Bell would say

something along the lines of I know you know who did this to my son. I know that you need to go down and talk to the police.... [E]very time they would see each other, they would argue about that. And that they were not friends. They did not like each other because of that. [Appellant] would say, I don't know who shot your son. I'm not testifying,—you know, I'm not going down to speak to the police because I don't know that. And they would argue about that.

The court stated that if defense counsel had made such a proffer when he was cross-examining Bell, the court "may have allowed that inquiry." Counsel responded that when he was cross-examining Bell, he believed the court was asking what he anticipated to be Bell's testimony. The court found that the additional information provided by defense counsel established a factual basis to make the bias inquiry, and permitted counsel to elicit information from appellant regarding bias. The court stated, "[i]f [defense counsel] had proffered this [information] at the time he was cross-examining Bell, I would have allowed the inquiry."

**3.** It is only "when the Sixth Amendment to the Constitution is satisfied[,] ... [that] we will review more leniently for abuse of discretion." (*Melvin*) *Brown*, 952 A.2d at 950 (internal citations omitted).

(D.C.1996)). In order to lay a proper foundation for bias cross-examination,[4] defense counsel must proffer, at the very least, "a well-reasoned suspicion rather than an improbable flight of fancy to support the proposed cross-examination." *Howard v. United States*, 978 A.2d 1202, 1207 (D.C.2009) (citations and internal quotation marks omitted).[5] However, "[a]n exhaustive proffer is not normally a strict requirement for initiation of a line of cross-examination." *Best v. United States*, 328 A.2d 378, 382 (D.C.1974) (footnote omitted). Rather, the "standard is a fairly lenient one." *Howard*, 978 A.2d at 1207. Because of the central role that bias cross-examination plays in a criminal trial, "the court must accord such cross-examination 'wide latitude and must not [ ] unduly restrict[ ][it].'" *Blunt v. United States*, 863 A.2d 828, 833 (D.C.2004) (citation omitted). The Supreme Court has recognized that cross-examination "is necessarily exploratory," *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and this court has stated that, "[c]onsistent with the exploratory nature of cross-examination and the leniency of the foundation requirement, the proffer need not be ... particularly compelling." *Clayborne v. United States*, 751 A.2d 956, 963 n. 6 (D.C. 2000). "'[T]he trial court must give counsel some leeway to probe for information that she cannot prove before commencing cross-examination.'" *Cunningham*, 974 A.2d at 245 (citation omitted); *see Martinez v. United States*, 982 A.2d 789, 794 (D.C.2009) (evidence of bias was admissible because it "at least arguably" gave the witness "a motive to 'slant his testimony in the favor of the government'") (citation omitted). This court has found the proffer to be sufficient when it provides some specifics "as to who was involved, what transpired, and when and where the events resulting in bias occurred." *Jones v. United States*, 516 A.2d 513, 518 (D.C. 1986) (referring to proffer in *Best v. United States*, 328 A.2d 378 (D.C.1974)).

█ In the instant matter, defense counsel's proffer was a "well reasoned suspicion" as opposed to an "improbable flight of fancy." The trial court was not justified in completely barring cross-examination on the suspected bias. Appellant's counsel proffered a number of factual details: (1) Bell, Bell's step-son and appellant were all involved in an incident; (2) the incident was a shooting in which appellant was the target but Bell's step-son was hit and wounded; (3) appellant was being shot at by the gunman, who was chasing after him; (4) although Bell witnessed the shooting, he was unable to identify the shooter; (5) appellant never testified against the shooter of Bell's son; (6) the incident happened several years ago; and (7) it occurred in the area of Gainesville Street. Defense counsel specified who was involved, what happened, and where it transpired. Based on this proffer, the jury could have reasonably concluded that Bell thought appellant knew who was chasing after him because the shooter specifically targeted appellant and appellant was running away from the shooter. The jury could have concluded that Bell blamed appellant for his son getting shot, as well as for not testifying against the shooter on

---

4. "Whether the defendant has established an adequate foundation for a proposed line of cross-examination is a discretionary determination to be made ... by the trial judge." (*Rocky*) *Brown v. United States*, 683 A.2d 118, 127 (D.C.1996).

5. An adequate foundation may also be provided by setting forth "a reasonable factual foundation," (*Melvin*) *Brown*, 952 A.2d at 947, or "some facts which support a genuine belief that the witness is biased in the manner asserted." *Howard* 978 A.2d at 1207 (citations and internal quotation marks omitted).

behalf of his son. *See, e.g., Best v. United States,* 328 A.2d 378, 379–82 (D.C.1974) (proffer sufficient to permit inquiry to show police officer was biased in favor of government where defense counsel indicated that the officer had struck defendant and defendant was taken to the hospital); *cf. Melendez, supra,* 10 A.3d at 152–54 (proffer insufficient to permit inquiry about witness's alleged violation of stay-away order where defense counsel failed to provide any factual basis for the alleged violation and failed to explain how the violation would establish witness's bias in favor of government).

Moreover, where, as here, the government's entire case rested on the testimony of one witness, the trial court should have been particularly prepared to permit bias cross-examination. *Cunningham,* 974 A.2d at 245 ("[C]ross-examination seeking to ferret out bias takes on enhanced significance where the credibility of the key government witness is in issue.") (citation and internal quotation marks omitted). The government did not have any physical evidence linking appellant to the stabbing of Charles Smith. Although Bell testified that there were other people present at the stabbing, the government did not call on anyone else to testify. The government's case turned on whether the jury believed Bell's story, and the trial court prevented appellant from cross-examining Bell on matters that could cause the jury to reasonably question Bell's credibility.

█ Finally, "the trial court should permit exploration of all matters that contradict, modify, or explain testimony given by a witness during direct examination." (*Melvin*) *Brown,* 952 A.2d at 947 (citations and internal quotation marks omitted). On direct examination, Bell testified that he was "on very good terms" with the appellant, that he had never had any negative incidents with appellant, that he did

not harbor any "grudges or beefs" against appellant, that he had no reason to fabricate his testimony against him, and that appellant was like family to him. Because Bell affirmatively asserted that he was not biased against appellant, appellant should have been given the opportunity to ask Bell about an incident that could have contradicted or modified his testimony.

### III.

█ Where the constitutional error arises from the trial court entirely precluding an appellant from cross-examining a witness for bias, reversal is required unless the constitutional error was harmless beyond a reasonable doubt. (*Melvin*) *Brown,* 952 A.2d at 950. In assessing harm, this court must " 'assum[e] that the damaging potential of the [prohibited] cross-examination was fully realized....' " *Martinez v. United States,* 982 A.2d 789, 796 (D.C.2009) (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431). Under the *Chapman* standard, "it must be clear beyond a reasonable doubt (1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony." (*Rocky*) *Brown,* 683 A.2d at 127 n. 10 (citation omitted). The Supreme Court has set out "a host of factors" for a reviewing court to consider when determining whether Confrontation Clause errors are harmless beyond a reasonable doubt. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431. "These factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

The government contends appellant was not prejudiced because he was provided an opportunity to "cure" the error by recalling Bell as a witness. The government asserts that appellant strategically chose not to "cure" the harm, and therefore, cannot now claim prejudice. The opportunity to cure, according to the government, was created during appellant's examination, when the court told the government that if it had been provided with the second proffer during Bell's cross-examination, it "would have allowed the [bias] inquiry." [6]

The government also argues that appellant's fear that he was not free to call Bell as a defense witness to "cure" any harm that resulted from the trial court's error, because doing so might subject appellant to a credibility attack based on asserted drug activity, was unwarranted. Even though Bell had knowledge of appellant's involvement with drugs, the government asserts that appellant was under no such threat because the prosecutor had decided not to cross-examine appellant regarding his drug activity or recall Bell to present evidence regarding appellant's drug activity. Therefore, the government argues, defense counsel was free to call Bell as a defense witness, ask the court for permission to conduct the bias inquiry, and "cure" any harm by asking Bell the same questions on direct-examination that he initially sought to ask on cross-examination during the government's case-in-chief.

We are not convinced by the government's argument. The prosecutor never flatly asserted that he would not attack appellant's credibility by eliciting testimony about his drug activity through Bell if Bell was called as a defense witness. As appellant recognizes, "[h]ad the defense called Mr. Bell as a witness, the prosecutor would have attempted to elicit testimony that [appellant] was a drug dealer-evidence that the prosecutor believed was inadmissible beforehand but likely fair game after [appellant's] testimony." The fact that the government did not free appellant from all fear of reprisal by way of an attack on his credibility undercuts the government's argument that appellant could have "cured" the harm that resulted from the trial court's error.

In any event, even if appellant negotiated with the government and was "free" to conduct the belated bias inquiry by calling Bell in his case, it is not evident such an inquiry would have cured the harm such that the trial court's error would be harmless beyond a reasonable doubt. Calling Bell as a defense witness was not a complete substitute for cross-examining Bell during the government's case-in-chief. As this court has stated, " '[o]nly a lawyer without trial experience would suggest that the limited right to impeach one's own witness is the equivalent of that right to immediate cross-examination which has always been regarded as the greatest safeguard of American trial procedure.' " *Thomas v. United States,* 914 A.2d 1, 16 (D.C.2006) (citation omitted). Furthermore, where, as here, the government's case rests entirely upon the credibility of Bell,[7] the confrontational nature of a bias cross-examination, as well its timing, could significantly affect the impact of the witness's testimony. That is, in this situation, the "punch" of a belated bias inquiry, con-

---

**6.** See note 2, *supra.* During that same colloquy, the court told defense counsel that it "may have allowed that [bias] inquiry [during Bell's cross-examination,]" and that "this kind of proffer may have allowed you to make that inquiry."

**7.** The government did not present any physical evidence corroborating Bell's testimony on material points, or otherwise connecting appellant to the death of Charles Smith.

ducted during the defense's case after appellant testified, could be considerably more diluted than eliciting the answers on cross-examination during the government's case-in-chief. *See New York Life Ins. Co. v. Taylor*, 79 U.S.App. D.C. 66, 74, 147 F.2d 297, 305 (1944) ("A period of time has gone by; an impression on the jury has been made.") We cannot, with the requisite certainty, say that an opportunity to conduct the bias inquiry during the defense case would have removed the harm created by failing to cross-examine Bell as to any bias immediately after the government conducted its direct examination, and prior to the defense presenting evidence.[8]

The government also contends that "the restricted line of questioning would not have weakened the impact of [Bell]'s testimony" because appellant knew Bell would deny any bias, appellant testified as to bias, argued his bias theory, and impeached Bell with inconsistencies within his own prior statements. However, because this case comes down to the credibility of the witnesses, the fact that Bell may have denied bias is besides the point. In fact, one cannot state with confidence what Bell's reaction would have been when faced with the factors suggesting possible bias. Juries observe a witness's demeanor when making credibility determinations. Furthermore, appellant's testimony about bias and his closing argument based on his testimony was no substitute for a direct confrontation of Bell. *See Harris v. United States*, 834 A.2d 106, 127 (D.C.2003) ("[Appellant's] testimony was inherently susceptible to doubt because of his status as an accused defendant with a motive to fabricate."). Lastly, impeaching Bell with various inconsistencies did not directly address

the heart of defense's theory that Bell was lying because of bias. *See Howard*, 978 A.2d at 1210 ("Because the trial court's ruling prevented appellant from presenting his main defense theory, we cannot find harmless error under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).").

In short, for all the above reasons, we cannot conclude that the constitutional error was harmless. The judgment on appeal must be reversed and the case remanded for a new trial.

*Reversed and remanded.*

---

8. Moreover, depending on how the cross-examination of Bell had turned out, the defense may have decided not to call appellant at all in order to lay the bias possibility before the jury. In appellant's reply brief, he states "de-

fense counsel likely never intended to put [appellant] on the stand at all and did so only because the trial court refused to permit cross-examination of Mr. Bell."