McLeese, Associate Judge, dissenting:
The opinion for the court holds that the trial court permissibly precluded cross-examination of Officer Damien Williams about whether Officer Williams made false statements in a sworn affidavit in connection with an unrelated matter. I respectfully dissent.
I.
The opinion for the court lays out the evidence at trial and the procedural context of the ruling at issue. Ante at 48-51. I agree that Mr. Smith adequately preserved a challenge to that ruling. Ante at 53. I do not agree, however, with the court's holding that the ruling was permissible. Ante at 53-61.
The Confrontation Clause of the Sixth Amendment "guarantees a defendant in a criminal case the right to confront witnesses against him." Longus v. United States , 52 A.3d 836, 849 (D.C. 2012) (internal quotation marks omitted). That right is violated if the trial court "precludes the defense from pursuing a line of examination that is necessary to enable the jury to fully evaluate the witness's credibility." Id. at 850-51.
Mr. Smith sought to cross-examine Officer Williams about an unrelated incident in which Officer Williams arrested a man named Antwann Barkley. Mr. Smith contended that Officer Williams's sworn statements about the incident demonstrated Officer Williams's corruption bias, i.e. , that Officer Williams had shown a "willingness to obstruct the discovery of the truth by manufacturing or suppressing testimony or otherwise to thwart the ascertainment of truth in a judicial proceeding." Coates v. United States , 113 A.3d 564, 572 (D.C. 2015) (internal quotation marks omitted).
*70 Such conduct "bears directly on the veracity of the wrongdoer in testifying at a trial." Longus , 52 A.3d at 852 (internal quotation marks omitted); cf. In re C.B.N. , 499 A.2d 1215, 1219 (D.C. 1985) ("The willingness to testify falsely goes to the core of the witness'[s] credibility ....").
We have held that an attorney seeking to cross-examine a witness about corruption bias "need only proffer some facts which support a genuine belief that the witness is biased in the manner asserted or, lacking such facts, at least a well-reasoned suspicion of bias rather than an improbable flight of fancy." Coates , 113 A.3d at 575 (internal quotation marks, brackets, and footnote omitted); cf. Moore v. United States , 114 A.3d 646, 655 (D.C. 2015) ("[T]he requirement of a reasonable factual foundation is a fairly lenient one. It simply calls for a credible good faith proffer of facts supporting a genuine belief or well-reasoned suspicion[,] ... [which] may be based on plausible factual allegations ....") (internal quotation marks and footnote omitted).
The trial court has discretion to impose reasonable limits on cross-examination. See, e.g. , Brown v. United States , 683 A.2d 118, 124 (D.C. 1996) (cross-examination may be restricted "within reasonable limits to avoid such problems as harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant") (internal quotation marks omitted). Nevertheless, the Confrontation Clause precludes limits on cross-examination that "keep[ ] from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." Coates , 113 A.3d at 573 (internal quotation marks omitted); see also Hagans v. United States , 96 A.3d 1, 31 (D.C. 2014) (trial court may not "preclude a meaningful degree of cross-examination that allows the defense to pursue the proposed line of cross-examination in sufficient depth to elicit the nature and extent of the witness's bias") (internal quotation marks omitted).
Under this framework, I conclude that the trial court erred in precluding cross-examination of Officer Williams on the theory that Officer Williams intentionally made false statements in a sworn affidavit about Mr. Barkley's arrest. The United States has not disputed that submitting an intentionally false affidavit would demonstrate corruption bias. Nor has the United States adequately disputed that Mr. Smith was required to demonstrate only a "well-reasoned suspicion" in order to have a sufficient factual basis to cross-examine Officer Williams about corruption bias. It was not until oral argument that the United States advanced the argument that there is "tension" between the "well-reasoned suspicion" standard this court applied in cases such as Coates and the approach taken in cases such as Sherer v. United States , 470 A.2d 732, 738-39 (D.C. 1983) (upholding trial court's preclusion of cross-examination of witness about witness's alleged perjury in unrelated trial, because defense counsel's proffer of proof of prior perjury was conclusory and contested by United States); see also Roundtree v. United States , 581 A.2d 315, 321 (D.C. 1990) ("Where an accused seeks to impeach the credibility of a witness by offering evidence that the witness has made a false claim under similar circumstances, the confrontation clause mandates that the trial court give defendant leave to cross-examine about the prior claim only where it is 'shown convincingly' that the prior claim is false.") (citing Sherer ). This court generally will not consider arguments made for the first time at oral argument, see, e.g. , Scott v. Burgin , 97 A.3d 564, 565 n.2 (D.C. 2014), and I therefore would decide this case under the "well-reasoned suspicion" standard.
*71 In my view, the information proffered by defense counsel at trial sufficed to permit defense counsel to plausibly argue that Officer Williams's sworn affidavit about Mr. Barkley's arrest was knowingly false. According to the affidavit, Officer Williams "began to redirect" Mr. Barkley "when [Mr. Barkley] began shoving Officer Williams," at which point Mr. Barkley adopted a fighting stance and approached Officer Williams. Also according to the affidavit, it was at that point that Officer Williams struck Mr. Barkley. In contrast, defense counsel proffered information indicating that Mr. Barkley had not taken any threatening actions at the time that Officer Williams struck Mr. Barkley. Specifically, defense counsel pointed to: (1) Mr. Barkley's account of the incident as reflected in the IAD Report, which states that Mr. Barkley had been trying to photograph the incident when an officer knocked his cell phone out of his hand and someone punched him in the face from behind; and (2) statements by Mr. Barkley's attorney that three witnesses disputed Officer Williams's account and that video footage from Mr. Barkley's cell phone was inconsistent with the police version that Mr. Barkley dropped his cell phone and assumed a fighting stance.
The information proffered by defense counsel did not definitively establish that Officer Williams intentionally submitted a false affidavit, nor did it necessarily demonstrate that Officer Williams probably did so. But the proffered information did reasonably support the line of cross-examination that defense counsel sought to undertake. Cf., e.g. , Longus , 52 A.3d at 853 (defense counsel provided adequate basis to support cross-examination of witness on corruption bias, where proffer "did not manufacture allegations of bias out of thin air," but instead relied on newspaper account and fact of "government's suspension and investigation" of witness) (internal quotation marks omitted).
The United States argues, however, that this court's cases have required the trial court to permit cross-examination as to a witness's alleged corruption bias only where the government had concluded that the witness had in fact acted corruptly. That proposed limitation is not consistent with either our articulation or our application of the "well-reasoned suspicion" test. See, e.g. , Longus , 52 A.3d at 852-54 (finding that trial court erred in precluding questioning of detective on corruption bias, where detective was subject of pending investigation for allegedly coaching witnesses in another case but there was no indication that government had concluded that detective in fact had improperly coached witnesses).
In denying Mr. Smith's new-trial motion, the trial court expressed concern that permitting cross-examination about Mr. Barkley's arrest would have led to a "trial-within-a-trial" about that incident. Although that is a legitimate consideration, we have held that such considerations "cannot justify a curtailment [of bias cross-examination] which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." Coates , 113 A.3d at 573 (internal quotation marks omitted).
For these reasons, I would hold that the trial court erred by precluding cross-examination of Officer Williams as to whether the sworn affidavit concerning Mr. Barkley's arrest was intentionally false. I am not persuaded by the contrary conclusion of the opinion for the court. First, the opinion for the court states that the differences among the various accounts of Mr. Barkley's arrest are "minor" and therefore "do not necessarily indicate that someone is lying." Ante at 56, 57. I do not view the differences between Officer Williams's account *72 and the defense proffer as minor. On Officer Williams's account, Mr. Barkley apparently made first physical contact, Mr. Barkley shoved Officer Williams, and Mr. Barkley took an aggressive fighting stance before Officer Williams struck Mr. Barkley. On the account proffered by the defense, Mr. Barkley apparently did not initiate physical contact and had taken no threatening actions before he was struck. The differences between those accounts are both stark and of critical significance. On Officer Williams's account, Mr. Barkley was guilty of assault on a police officer, but on the defense's account, Mr. Barkley was the victim of an unjustified use of force. It is true, as the opinion for the court notes, that the differences between the two accounts "do not necessarily indicate that someone is lying." Ante at 57 (emphasis added). But that is not the applicable standard, and the differences between the two accounts in my view provided an ample basis for defense counsel to cross-examine Officer Williams about whether Officer Williams was lying in the affidavit.
Second, the opinion for the court seems to weigh all of the information before the trial court, to determine how strongly that information considered as a whole supported a conclusion that Officer Williams had intentionally made false statements in the affidavit. Ante at 58-59. That is not our function, nor was it the function of the trial court. Rather, the proposed cross-examination should have been permitted as long as defense counsel proffered "some facts" supporting a "genuine belief" or "well-reasoned suspicion." Coates , 113 A.3d at 575 (internal quotation marks omitted). As we have explained, that "standard is a fairly lenient one. Because of the central role that bias cross-examination plays in a criminal trial, the court must accord such cross-examination wide latitude and must not unduly restrict it. ... [C]onsistent with the exploratory nature of cross-examination and the leniency of the foundation requirement, the proffer need not be particularly compelling." Blades v. United States , 25 A.3d 39, 43 (D.C. 2011) (brackets, ellipses, citation, and internal quotation marks omitted); cf., e.g. , Scull v. United States , 564 A.2d 1161, 1164 (D.C. 1989) ("[W]here counsel has information from her own client, which she does not know to be false and which is not inherently incredible, she has a sufficient good-faith basis for the proposed cross-examination.") (internal quotation marks omitted).
II.
Mr. Smith argues that the preclusion of corruption-bias cross-examination in this case requires reversal under the constitutional harmless-error standard of Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (to demonstrate harmlessness of constitutional error, government must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"). The United States did not dispute in its responsive brief that the Chapman standard applies. Although the United States did contend at oral argument that this court should instead apply the harmless-error standard applicable to non-constitutional errors, that argument came too late. Scott , 97 A.3d at 565 n.2. I therefore would apply the Chapman standard. See, e.g. , Longus , 52 A.3d at 854 (applying Chapman standard where trial court erroneously precluded defense from cross-examining witness about corruption bias).
I cannot say that the preclusion of corruption-bias cross-examination in this case was harmless beyond a reasonable doubt. "[C]ross-examination seeking to ferret out bias takes on enhanced significance where the credibility of the key government witness is in issue."
*73 Cunningham v. United States , 974 A.2d 240, 245 (D.C. 2009) (internal quotation marks omitted). The government's evidence connecting Mr. Smith to the handgun consisted almost exclusively of the testimony of two officers. Officer Williams was a key government witness, because only he testified about the retrieval of the handgun. The government emphasized Officer Williams in its opening statement and closing argument. Cf. Porter v. United States , 37 A.3d 251, 261 (D.C. 2012) ("As we have frequently observed, a prosecutor's emphasis on certain evidence is at least a highly relevant measure of the prejudicial impact of that evidence.") (internal quotation marks omitted). On cross-examination, Officer Williams gave seemingly evasive responses to defense counsel's questioning about whether the punch that broke Mr. Barkley's jaw was an approved defensive maneuver, whether the pending investigation involved alleged excessive force, whether Officer Williams was removed from his usual duties, and whether he was aware of the severity of the potential consequences of the investigation.
The remaining evidence against Mr. Smith was not overwhelming. The on-site photographs of the handgun were taken by Officer Williams on his cell phone, rather than by crime-scene personnel. Officer Williams and Officer Couch both testified to seeing Mr. Smith throw the handgun over the fence with his left hand, but the parties stipulated to evidence suggesting that Mr. Smith was in fact right-handed. No corroborative physical evidence, such as fingerprints or DNA, identified Mr. Smith as possessing the handgun. Moreover, defense counsel also attempted to impeach Officer Couch's testimony, by suggesting that Officer Couch had unjustifiably injured Mr. Smith in the course of effectuating the arrest in this case.
Because the trial court precluded the cross-examination at issue, we cannot be sure what would have happened at trial if the cross-examination had been permitted. Nevertheless, the United States bears the "heavy burden" of demonstrating beyond a reasonable doubt that the precluded cross-examination would not have affected the verdict in this case. Coleman v. United States , 948 A.2d 534, 553 (D.C. 2008). I conclude that the United States has not carried that burden. Cf., e.g. , Longus , 52 A.3d at 841-42, 853-54 (error in limiting cross-examination of detective about allegations that detective had improperly coached witnesses was not harmless under Chapman standard; cross-examination could have aided defense efforts to impeach government's principal witness at trial); Coles v. United States , 36 A.3d 352, 359-60 (D.C. 2012) (error in curtailing cross-examination of key government witness at trial about alleged collusion reflecting corruption not harmless beyond reasonable doubt; court could not say "that the defendant would have been convicted without the witness'[s] testimony, or ... that the restricted line of inquiry would not have weakened the impact of the witness'[s] testimony") (internal quotation marks omitted). I therefore would vacate the judgment and remand for further proceedings.
JUDGMENT
This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby
ORDERED and ADJUDGED that the trial court's judgment is affirmed.